FILED
CLERK, U.S. DISTRICT COURT
2/17/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: CD DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

KHALID ITUM,
aka "Khalid Shaher Taher Itum,"

Defendant.

CR No. 2:23-cr-00082-FMO

I N D I C T M E N T

[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. §§ 981 and 982, 28 U.S.C. § 2461(c): Criminal Forfeiture]

The Grand Jury charges:

COUNTS ONE AND TWO

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant KHALID ITUM was a Jordanian citizen who resided in Los Angeles, California. From in or around November 2017 through in or around March 2019, defendant ITUM was an executive at MoviePass, Inc. ("MoviePass").

2. MoviePass was a privately held company with offices in New York, New York, that offered a subscription service that charged

subscribers a flat monthly fee in exchange for MoviePass credits. Subscribers could spend those credits on movie tickets from any theater in MoviePass's large network of participating theaters. In or around August 2017, MoviePass was acquired by Helios & Matheson Analytics ("HMNY"), a publicly traded company with offices in Miami, Florida, and New York, New York.

3. Kaleidoscope Productions, LLC ("Kaleidoscope") was a California corporation registered in March 2017 and based in Los Angeles, California, that provided production and marketing services. Defendant ITUM was Kaleidoscope's founder and CEO.

4. JJ/LA LLC was a California corporation owned and operated by J.C., defendant ITUM's personal friend.

5. Defendant ITUM maintained a checking account at JP Morgan Chase in Los Angeles, California, in the name of Kaleidoscope Productions, LLC, for which he was the sole signatory (the "Kaleidoscope Account").

6. MoviePass maintained a bank account at Citibank NA in Englewood Cliffs, New Jersey, in the name of MoviePass Inc. (the "MoviePass Account").

7. HMNY maintained a bank account at Citibank NA in Englewood Cliffs, New Jersey, in the name of Helios and Matheson Analytics (the "HMNY Account").

8. In or around 2017, defendant ITUM, through Kaleidoscope, produced an event at the annual Coachella Valley Music and Arts Festival ("Coachella 2017"). Neither MoviePass nor HMNY was involved in this event at Coachella 2017.

9. To help fund production costs at Coachella 2017, defendant ITUM borrowed approximately $125,000 from B.D. and agreed to repay B.D. approximately $150,000 in return.

10. Additionally, to help fund production costs at Coachella 2017, defendant ITUM borrowed the credit card of T.B., who authorized defendant ITUM to make charges of approximately $41,000. Defendant ITUM, without prior authorization from T.B., instead charged approximately $105,000 to T.B.'s credit card and agreed to repay him approximately $110,000.

B. THE SCHEME TO DEFRAUD

11. Beginning no later than in or around February 2018, and continuing through at least in or around February 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant ITUM, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud HMNY as to material matters, and to obtain money and property from HMNY by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

12. The scheme to defraud operated, in substance, as follows:

a. In order to obtain funds to repay B.D., defendant ITUM submitted sham invoices to HMNY executives for services purportedly rendered by Kaleidoscope and JJ/LA. In fact, as defendant ITUM knew, HMNY owed neither Kaleidoscope nor JJ/LA for the services listed on the sham invoices.

b. Defendant ITUM caused HMNY employees to initiate interstate wire transactions to transfer funds from the MoviePass Account and the HMNY Account to the Kaleidoscope Account to pay the sham invoices.

c. To conceal the scheme to defraud, defendant ITUM falsely represented to HMNY's independent auditor that Kaleidoscope had been used as a payment vehicle for MoviePass expenses from Coachella 2018.

13. In executing the fraudulent scheme described above, defendant ITUM caused HMNY losses of approximately $260,000.

C. USE OF INTERSTATE WIRES

14. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant ITUM transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | 02/26/2018 | Interstate wire transfer of $150,000 from the MoviePass Account, through the Federal Reserve wire network, to the Kaleidoscope Account. |
| TWO | 03/30/2018 | Interstate wire transfer of $350,000 from the HMNY Account, through the Federal Reserve wire network, to the Kaleidoscope Account. |

COUNTS THREE AND FOUR

[18 U.S.C. § 1957]

15. The Grand Jury realleges paragraphs 1 through 9 and 11 through 13 of this Indictment here.

16. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant ITUM, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, as charged in Counts One and Two of this Indictment:

| **COUNT** | **DATE** | **MONETARY TRANSACTION** |
|---|---|---|
| THREE | 02/27/2018 | Wire transfer of $150,000 from the Kaleidoscope Account to B.D.'s TD Bank NA account ending in 1266. |
| FOUR | 04/20/2018 | Wire transfer of $110,000 from the Kaleidoscope Account to Soleil Management LLC's Bank of America account ending in 9593. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

17. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of defendant KHALID ITUM's conviction of either of the offenses set forth in Counts One or Two of this Indictment.

18. Defendant ITUM, if so convicted, shall forfeit to the United States of America the following:

a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

19. Pursuant to Title 18, United States Code, Section 981(a)(1)(c), as incorporated by Title 28, United States Code, Section 2461(c), if so convicted, defendant ITUM shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant ITUM, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has

been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

20. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of defendant KHALID ITUM's conviction of either of the offenses set forth in Counts Three or Four of this Indictment.

21. Defendant ITUM, if so convicted, shall forfeit to the United States of America the following:

a. Any property, real or personal, involved in such offense, and any property traceable to such property; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

22. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), defendant ITUM, if so convicted, shall forfeit substitute property, if, by any act or omission of defendant ITUM, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/s/

Foreperson

E. MARTIN ESTRADA
United States Attorney

Scott M. Garringer
Deputy Chief, Criminal Division For:

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DAVID Y. PI
Assistant United States Attorney
Major Frauds Section